# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| KELVIN L. REED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:13-cv-0412-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| CLARK COUNTY SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 18), filed by Defendant Clark County School District, to which *pro se* Plaintiff Kelvin L. Reed filed a Response in opposition, (ECF No. 22).[1]

## I.   BACKGROUND

This case centers upon workplace discrimination, retaliation, and hostile work environment claims by Plaintiff Kelvin L. Reed against his employer, Clark County School District. (Compl., ECF No. 1).  Plaintiff, an African-American male, alleges that he began working as a counselor for Defendant in August 2006 and has continued in that position through the present.  On February 16, 2012, Plaintiff alleges that he was transferred from Cambeiro Elementary School to Desert Pines High School ("DPHS") pursuant to an out-of-court settlement regarding prior claims of workplace discrimination. (Compl. at 2:19-27).  The Complaint details five separate instances of alleged discrimination and harassment that began shortly after Plaintiff began his employment at DPHS.

On April 10, 2012, Plaintiff alleges that he received an oral warning regarding an incident that took place on March 14, 2012, between himself and a disruptive student. (*Id.* at

---

[1] Defendant also filed a Reply in support of its Motion (ECF No. 23).  However, the Court did not consider the contents of this filing in reaching the instant ruling.

3:1-4).  Plaintiff claims that the DPHS administration's investigation into the incident was "totally biased," and that it concluded, without any factual basis, that Plaintiff had yelled at a student so it could give Plaintiff a poor performance evaluation later in 2012. (*Id.* at 3:6-13).

On May 24, 2012, Plaintiff claims that he was "taunted" by his immediate supervisor, Assistant Principal Barbara Collins, when she publicly referred to him as "Mr. Reed" three times despite knowing that Plaintiff holds a Ph.D. (*Id.* at 3:14-21).

On September 24, 2012, Plaintiff alleges that he was singled-out for harassment when Ms. Collins issued a written warning based on Plaintiff's failure to prepare student schedules by the first day of school, though he had never been instructed to complete the task by that date. (*Id.* at 3:27-4:2).  Plaintiff alleges that, though other counselors made errors in preparing student schedules, he alone was investigated by Ms. Collins and ordered to take a remedial training course regarding schedule preparation. (*Id.* at 4:9-20).

Plaintiff alleges that he was again harassed when Ms. Collins issued a another written warning regarding a public argument that had taken place between Plaintiff and Assistant Principal Christie Ford on September 24, 2012. (*Id.* at 4:21-24).  Though Plaintiff does not describe the event in detail, he claims that the incident arose out of a "misunderstanding" by Ms. Ford, and that the investigation into the incident was "totally biased." (*Id.* at 24-28).  Ms. Ford did not receive any disciplinary sanctions as a result of the incident. (*Id.* at 5:2-3).

On October 8, 2012, Plaintiff alleges that Ms. Ford said, "You are so unprofessional" as Plaintiff walked by her in the hallway, though Plaintiff had said nothing to provoke such a statement. (*Id.* at 5:4-6).

Despite Plaintiff's written complaints about these incidents to several members of Defendant's administration, including: Superintendent Dwight Jones, Associate Superintendent Patrick Skorkowsky, Director of Guidance and Counseling Kim Boyle, Academic Manager Sheri Davies, Executive Manager for Affirmative Action Thomas Rodriguez, and Trustee

1  Lorraine Alderman, Defendant never initiated an investigation. (*Id.* at 5:7-14).

2      Based on these allegations, Plaintiff filed two complaints with the United States Equal

3  Employment Opportunity Commission ("EEOC"), claiming that Defendant issued the written

4  warnings and negative performance evaluations because he is an African-American male. (*Id.*

5  at 8-9).  The EEOC issued right-to-sue letters on December 12, 2012, and February 7, 2013.  In

6  the Complaint, Plaintiff raises claims for (1) workplace discrimination, (2) retaliation, and (3)

7  hostile work environment, each under Title VII of the Civil Rights Act of 1964, codified at 42

8  U.S.C. §§ 2000e, *et seq*.

9  **II.    LEGAL STANDARD**

10      The Federal Rules of Civil Procedure provide for summary adjudication when the

11  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

12  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

13  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

14  may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

15  (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

16  jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if

17  reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

18  in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

19  Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

20  principal purpose of summary judgment is "to isolate and dispose of factually unsupported

21  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

22      In determining summary judgment, the Court applies a burden-shifting analysis.  "When

23  the party moving for summary judgment would bear the burden of proof at trial, it must come

24  forward with evidence which would entitle it to a directed verdict if the evidence went

25  uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is

1  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

2  **III.   DISCUSSION**

3        As an initial matter, due to Plaintiff's status as a *pro se* litigant, the Court has liberally

4  construed his filings, holding them to standards less stringent than formal pleadings drafted by

5  attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In the instant Motion, Defendant

6  argues that it is entitled to summary judgment as to all of Plaintiff's claims.  The Court will

7  address each claim in turn.

8      **A.   Title VII Discrimination**

9        The Court analyzes Title VII discrimination claims within the burden-shifting

10  framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "Under this analysis,

11  plaintiffs must first establish a prima facie case of employment discrimination." *Hawn v. Exec.*

12  *Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).  "Establishing a prima facie Title VII case

13  in response to a motion for summary judgment requires only minimal proof and does not even

14  need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs., Ltd.*,

15  338 F.3d 981, 984 (9th Cir. 2003) (internal citations and quotations omitted).

16        To establish a prima facie case, Plaintiff must present evidence showing: (1) he is a

17  member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he

18  suffered an adverse employment action; and (4) that similarly situated individuals outside his

19  protected class were treated more favorably, or other circumstances surrounding the adverse

20  employment action give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon*

21  *Co.*, 636 F.3d 544, 552 (9th Cir. 2011).

22        If Plaintiff establishes a prima facie case, "the burden of production, not of persuasion,

23  shifts to the employer to articulate some legitimate, nondiscriminatory reason for the

24  challenged action." *Hawn*, 615 F.3d at 1155 (internal citations and quotations omitted).  "If

25  defendant meets this burden, [the plaintiff] must then raise a triable issue of material fact as to

1  whether the defendant's proffered reasons for their terminations are mere pretext for unlawful

2  discrimination." *Id.*

3        While Plaintiff's evidence establishes that he was a member of a protected class and that

4  he suffered adverse employment actions, Plaintiff has nevertheless failed to adequately support

5  all of the necessary elements for a prima facie case of employment discrimination.  It is

6  undisputed that Plaintiff is both African American and male, and therefore is part of classes that

7  are protected under Title VII. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1031

8  (9th Cir. 2006); *Brooks v. Hilton Casinos, Inc.*, 714 F. Supp. 1115, 1119 (D. Nev. 1989).

9  Additionally, the negative performance evaluations issued to Plaintiff constitute adverse

10  employment actions. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000);

11  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  However, Plaintiff fails to put

12  forward sufficient evidence to demonstrate that he was performing his job responsibilities in a

13  satisfactory manner, and therefore the Court finds that summary judgment is warranted as to the

14  Title VII discrimination claim.[2]

15        Though Plaintiff disputes whether written warnings and poor performance evaluations

16  were warranted in response to the incidents described in the Complaint, he fails to provide

17  evidence demonstrating that he acted in accordance with Defendant's policies.  In regard to the

18  incident involving the disruptive student on March 14, 2012, one of the witnesses stated that

19  Plaintiff "got a little too upset and aggressive." (Ex. 5 to Def.'s Mot. at 15, ECF No. 18-1).

20  Another witness recounted that Dr. Reed and the student "began arguing" after the initial

21  disruption. (Ex. 10 to Pl.'s Resp., ECF No. 22).  On March 16, 2012, DPHS Principal Timothy

22  Stephens wrote an email noting that Plaintiff "blew up on a kid two days ago." (Ex. 13 to Pl.'s

23  Resp.).  Arguing that DPHS' response was unwarranted, Plaintiff relies purely upon his own

24  

25  [2] Because the Court finds that Plaintiff has failed to demonstrate that he was performing his job in a satisfactory manner, it does not reach the question as to whether Plaintiff has sufficiently shown that similarly situated individuals outside Plaintiff's protected classes were treated more favorably.

statements that refute the accounts of other witnesses. (Ex. 19 to Pl.'s Resp. ("At no time did I raise my voice or act aggressively during my interaction with the student.")). However, Plaintiff's uncorroborated, self-serving statements are insufficient by themselves to establish a genuine dispute of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.") (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

In regard to the warning and subsequent negative performance review based on Plaintiff's failure to create student schedules by the first day of school, Plaintiff merely contends that he was not informed of the deadline and does not dispute that the schedules were not completed. However, even without considering Defendant's arguments that (a) Plaintiff was repeatedly informed of the deadline by his supervisors and (b) the deadline should have been obvious, the Court finds that Plaintiff has failed to demonstrate that he was performing his job in a satisfactory manner. Plaintiff does not provide any extrinsic evidence indicating that he adequately completed the task or that his failure meet the deadline did not render his performance to be unsatisfactory. As his own self-serving statements are insufficient to raise a genuine issue of material fact, the Court finds that Plaintiff has failed to provide adequate support for this aspect of his claim.

Similarly, as to the warning that was issued following the public argument between Plaintiff and Assistant Principal Ford, Defendant has provided reports and witness statements showing that Plaintiff became confrontational after Ms. Ford said "good morning" to him in the DPHS hallway. (Ex. 11-12 to Def.'s Mot., ECF 18-2). Though Plaintiff claims that the incident was a "misunderstanding" and that Ms. Ford was actually the one who acted inappropriately, (Ex. 1 to Pl.'s Resp. at 4, ECF No. 22), he provides no evidence in support other than his own self-serving declaration.

Thus, Plaintiff has failed to provide sufficient evidence showing that he was performing his job duties in a satisfactory manner, and therefore summary judgment is warranted as to Plaintiff's Title VII discrimination claim.[3]

### B.   Title VII Retaliation

"To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  With this claim, Plaintiff asserts that the warnings and negative performance evaluations were issued in response to his recently settled claims of discrimination and his June 2012 EEOC complaint. (Pl.'s Resp. 26:11-23, ECF No. 22).  Indeed, Plaintiff's EEOC complaint and his prior Title VII suit constitute protected activity. *See, e.g.*, *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  Furthermore, as discussed *supra*, the negative performance evaluations constituted adverse employment actions under Title VII. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

However, Plaintiff fails to provide sufficient evidence demonstrating a causal link between his complaints of discrimination and the negative performance evaluations.  While Plaintiff is correct that close temporal proximity can imply causation, such evidence is insufficient to withstand a motion for summary judgment if it is not corroborated by the surrounding circumstances. *Dilettoso v. Potter*, 243 F. App'x 269, 272 (9th Cir. 2007); *see also Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003).

The circumstances surrounding the issuance of the warnings and negative performance evaluations in this case eliminate any inference that Defendant acted with retaliatory intent.  Though these adverse actions began just two months after Plaintiff transferred to DPHS

---

[3] The Court also notes that the record is completely devoid of evidence indicating that Defendant's proffered reasons for the adverse employment actions were pretext for unlawful discrimination.  Thus, even if Plaintiff had established a prima facie case, summary judgment would nevertheless be warranted.

pursuant to his agreement to settle his prior Title VII claims, they each occurred within days or weeks of the incidents of misconduct in which Plaintiff was allegedly involved.  This misconduct was documented by numerous witnesses, many of whom were not employed by DPHS.  (*See, e.g.*, Ex. 5 to Mot. at 17-18, ECF No. 18-1 (documenting the statements of separate student witnesses that "[Plaintiff] raised his voice a bit and told [a student] to be quiet, and she just kept telling him not to yell at her. . ." and that "[Plaintiff] started yelling at [the student] in her face so she responded 'please do not yell at me.'").

Therefore, because Plaintiff relies solely on temporal proximity as evidence of causation, and the surrounding circumstances negate any inference that Defendant acted with a retaliatory motive, the Court finds that summary judgment is warranted as to Plaintiff's Title VII retaliation claim.

## C.   Hostile Work Environment

To withstand a motion for summary judgment on a hostile work environment claim, a plaintiff must demonstrate that "(1) she was subjected to verbal or physical conduct because of her race [or gender], (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003) (internal quotations omitted).  Additionally, a plaintiff must show that the work environment in question was "was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005).

In this case, Plaintiff claims that Assistant Principal Barbara Collins' act of referring to him as "Mr. Reed" rather than "Dr. Reed," and Assistant Principal Christie Ford's public statement that Plaintiff was "so unprofessional" created a hostile work environment.  In support of his allegations, Plaintiff has submitted only his own letters detailing his accounts of the

incidents in question. (Exs. 23, 42 to Pl.'s Resp., ECF No. 22).  However, even assuming, *arguendo*, that Plaintiff has sufficiently shown that he was subjected to unwelcome conduct, Plaintiff has provided no evidence that this conduct was motivated by Plaintiff's race or gender. Moreover, the alleged comments do not constitute "extreme conduct" that amounted "to a change in the terms and conditions of employment," as required fir a Title VII hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code.  Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.") (internal quotations omitted).  As Plaintiff has failed to provide evidence supporting essential elements of this claim, the Court finds that summary judgment is warranted.

**IV.    CONCLUSION**

      **IT IS HEREBY ORDERED** that the Motion for Summary Judgment, (ECF No. 18), is **GRANTED**.

      **IT IS FURTHER ORDERED** that the Motion to Exclude Defendant's Reply, (ECF No. 25), is **DENIED as moot**.  The Clerk shall enter judgment accordingly and close the case.

      **DATED** this 13th day of January, 2015.

                    _____
                    Gloria M. Navarro, Chief Judge
                    United States District Court